# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SUSAN FREDERICKS<br>9696 BIA Route 14<br>Mandaree, ND 58757<br><br>JOHN FREDERICKS III<br>3730 29th Ave.<br>Mandan, N.D. 58554<br><br>CASEY FREDERICKS<br>61 92nd Ave. NW<br>Halliday, ND 58636<br><br>SHAWN FREDERICKS<br>HC 42 Box 692<br>Busby, MT 59016<br><br>MARY MALEE FREDERICKS<br>Box 1171<br>New Town, ND 58763<br><br>          *Plaintiffs*,<br><br>     v.<br><br>UNITED STATES DEPARTMENT OF THE<br>INTERIOR; DAVID L. BERNHARDT, in his official<br>capacity as Secretary of the United States Department<br>of the Interior;<br>1849 C Street, N.W.<br>Washington, DC 20240<br><br>          *Defendants.* | Case No._____<br><br><br>**COMPLAINT** |

## INTRODUCTION

1.     This case is about two leasing decisions of the Department of the Interior concerning lands that were allotted to individual Indians on the Fort Berthold Indian Reservation in North Dakota.  Under the applicable 1886 allotment agreement, the "United States does and will

hold the land thus allotted … *in trust for the sole use and benefit* of the Indian to whom such allotment shall have been made, or in case of his decease, *of his heirs*." Agreement at Fort Berthold art. IV (Dec. 14, 1886), ch. 543, § 23, 26 Stat. 1032, 1033 (1891) (emphasis added); Benjamin Harrison, A Proclamation (May 20, 1891), *in* 9 Messages and Papers of the Presidents 144-46 (James D. Richardson ed., 1898); *accord* 25 U.S.C. § 348 (identical language in the General Allotment Act of 1887). In the "Oil Lease Decision," the Department approved an oil lease that permits a life tenant to appropriate to herself the mineral wealth of allotted lands on the Fort Berthold Reservation, at the expense of the heirs who own the mineral estate as remaindermen and in contradiction of the Fort Berthold Mineral Leasing Act ("FBMLA"), Pub. L. No. 105-188, 112 Stat. 620 (1998). In the "Ag Lease Decision," the Department deprived the remaindermen of control over agricultural leasing, contrary to the express terms of the American Indian Agricultural Resource Management Act, Pub. L. No. 103-177, 107 Stat. 2011 (1993) (codified at 25 U.S.C. § 3701 *et seq.*) ("AIARMA").

     2.     ***Oil Lease Decision***. The Fort Berthold Reservation is rich in mineral wealth. To govern the mineral leasing of reservation lands, Congress passed the FBMLA—which is more protective of Indian landowners than the general mineral leasing statute, 25 U.S.C. § 396. Because ownership of Indian lands is often divided, the FBMLA allows the Secretary of the Interior to approve a mineral lease if "the owners of a majority of the undivided interest … consent" and the Secretary determines that the lease "is in the best interest of the Indian owners," and to then distribute the lease proceeds "to all owners … in accordance with the interest owned by each such owner." FBMLA § 1(a)(2)(A), (C). Alternatively, when an owner dies, the Secretary "may execute" a mineral lease when the heirs "have not been determined"—but again, only if the lease is in the owners' best interest. *Id.* § 1(a)(2)(A), (a)(3). Sometimes, wills or rules of intestate

succession create life tenancies, which permit the life tenant to possess the land during his or her lifetime while vesting title in the "remaindermen" who own the estate.  Under centuries of law, life tenants do not own, and cannot extract, mineral assets, which instead are owned by the remaindermen.

3.     In the Oil Lease Decision, the Interior Board of Indian Appeals ("IBIA") nonetheless found that the Department had properly executed a mineral lease at the behest of the life tenant that directs all of the land's mineral wealth to the life tenant.  *See Fredericks v. Great Plains Reg'l Dir.*, 67 IBIA 130 (2020) (attached as Exh. A) ("*Oil Lease Decision*").  When John Fredericks, Jr.—an enrolled member of the Three Affiliated Tribes of North Dakota—died in 2006, his trust and restricted fee lands on the Fort Berthold Reservation passed to seven of his children (also enrolled members of the Three Affiliated Tribes), with his surviving spouse Judy Fredericks receiving a life estate.  Yet before the heirs had even been determined, Judy purported to enter a lease on behalf of the estate that directs all of the lands' mineral wealth to herself.  The IBIA ultimately held that the Department had permissibly sanctioned that result.  Now, five of Fredericks, Jr.'s children who own the majority interest in Fredericks, Jr.'s land—the Heirs—seek to set aside the Department's decision under the Administrative Procedure Act ("APA") and to remedy the Department's breach of trust.

4.     First, Judy had no authority to execute a mineral lease on the estate's behalf. Indeed, the IBIA conceded as much but nonetheless found that the local *superintendent* had executed the lease based on the superintendent's signature on a form approving the "bonus" amount associated with the lease.  This form, however, is express that it is *not* the lease itself, and the IBIA's contrary holding is arbitrary and capricious and unsupported by substantial evidence. Second, and more fundamentally, the Department lacked authority to execute a lease, at the life

tenant's behest, that would direct the lands' mineral wealth to the life tenant and destroy the Heirs' interests in the mineral wealth they own.  Bedrock principles of Indian law, and the FBMLA itself, required the Department to act in the best interest of the Indian owners of the lands, and to distribute the lands' mineral proceeds to the lands' owners, which the Department failed to do. The Oil Lease Decision is thus arbitrary and capricious, not in accordance with law, unsupported by substantial evidence, and contrary to the Department's trust responsibilities.

5.     ***Ag Lease Decision***.  The AIARMA provides an express rule for agricultural leases on Indian lands and authorizes one set of owners to enter agricultural leases even over the objection of a nonconsenting minority.  The AIARMA provides that the "owners of a majority interest … are authorized to enter into an agricultural lease of the surface interest," which "shall be binding upon the owners of the minority interests in such land if the terms of the lease provide such minority interests with not less than fair market value for such land."  25 U.S.C. § 3715(c)(2)(A). In turn, the AIARMA defines "Indian landowner" to include any Indian who "owns … Indian land" or is "the beneficiary of the trust under which … Indian land is held by the United States." *Id.* § 3703(13).

6.     The Heirs, owning a majority stake in the relevant lands, duly executed an agricultural lease pursuant to the AIARMA and submitted the lease to the Bureau of Indian Affairs ("BIA") for approval.  But the BIA refused to approve the lease, and the IBIA affirmed.  *Fredericks v. Great Plains Reg'l Dir.*, 63 IBIA 274 (2016) (attached as Exh. B) ("*Ag Lease Decision*").  The IBIA *conceded* that the Heirs "are beneficiaries of the trust under which the trust property is held" and thus are owners under the AIARMA.  *Id.* at 279.  But it declined to apply the statute as written, averring that the Heirs' status as owners "does not give them the authority to enter into a lease" because remaindermen lack a "present possessory interest" under the common-law rules that

4

would apply if Congress had not addressed the matter by statute.  By departing from the AIARMA, the Ag Lease Decision is arbitrary, capricious, not in accordance with law, and contrary to the Department's trust responsibilities.

## JURISDICTION AND VENUE

7.      The Court has subject-matter jurisdiction over the Heirs' claims pursuant to 28 U.S.C. §§ 1331 and under sections 701 through 706 of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706.

8.      Section 702 of the APA waives the government's immunity for "action[s] in a court of the United States seeking relief other than money damages."  5 U.S.C. § 702.  This waiver of immunity "applies to any suit whether under the APA or not."  *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 186 (D.C. Cir. 2006) (internal quotation marks omitted); *see Cherokee Nation v. Dep't of the Interior*, 2020 WL 224486 at *2 (D.D.C. 2020).

9.      The Court may issue a declaratory judgment and further relief pursuant to 28 U.S.C. §§ 2201-2202 and 5 U.S.C. §§ 705-706.  There exists an actual controversy between the parties within the meaning of 28 U.S.C. § 2201.

10.     Venue is appropriate under 28 U.S.C. § 1391(e) because the Defendants reside in the District of Columbia.

## PARTIES

11.     The Heirs are five of the children of John Fredericks, Jr., who died owning trust or restricted property on the Fort Berthold Indian Reservation.  The Heirs are remaindermen of Fredericks, Jr.'s trust and restricted property and collectively own a 5/7th share in that property.

12.     The Department of the Interior is a Cabinet-level agency of the United States government responsible for overseeing and administering the trust lands and estates of tribal members.

13.     Defendant David L. Bernhardt is the Secretary of the Department of the Interior. Secretary Bernhardt is sued in his official capacity.

## FACTUAL ALLEGATIONS

14.     John Fredericks, Jr. died intestate on December 27, 2006.

15.     Prior to his death, Fredericks, Jr. had been married to and divorced from Candace Bridges.

16.     Five children—Susan Fredericks, John Fredericks III, Casey Fredericks, Mary Fredericks, and Shawn Fredericks—were born of the marriage between Fredericks, Jr. and Bridges, all of whom are heirs of Fredericks, Jr.

17.     At the time of his death, Fredericks, Jr. was married to Judy Fredericks.  Two children from the marriage with Judy Fredericks—Kathy Johnson and Frederick Fredericks—are also tribal members and heirs to Fredericks, Jr.'s estate.

18.     Fredericks, Jr. was an enrolled member of the Three Affiliated Tribes of North Dakota.

19.     All of Fredericks, Jr.'s children are enrolled members of the Three Affiliated Tribes of North Dakota.

20.     At the time of his death, Fredericks, Jr. left approximately 3,477 acres of land held in trust for him by the United States in 25 tracts of allotted land.  The majority of this land is agricultural land upon which Fredericks, Jr. operated a farm and ranch.  Some of this land also included valuable minerals, including the 160-acre tract that is the subject of the Oil Lease.

   a.  Estate Proceedings

21.     The BIA initiated proceedings to probate Fredericks, Jr.'s trust assets.

22.     Hearings were held on July 11, 2008, and December 4, 2008.

23.     On June 20, 2009, BIA Probate Judge James Yellow Tail issued a decision holding

that: (i) Judy Fredericks had a life estate in trust lands in which Fredericks, Jr. held more than a 5% share; (ii) the Fredericks children who were heirs each owned a 1/7th share of Fredericks, Jr.'s trust real estate as remaindermen; and (iii) Susan Fredericks, as the oldest child, owned any interests in lands in which Fredericks, Jr. had less than a 5% ownership interest.

24.     Under settled law, the heirs' rights to Fredericks, Jr.'s property vested at his death, not when probate proceedings concluded. *Estate of Boyd*, 43 IBIA 11, 23 (2006); *see In re Estate of John Fredericks, Jr.*, Case No. P 0000 47582 1P at 2 (U.S. Dep't of the Interior Office of Hearings and Appeals, June 20, 2009).

25.     The decision of Judge Yellowtail was appealed to the IBIA on June 27, 2011.

26.     On July 11, 2013, the IBIA upheld the probate decision, rendering the decision final and effective. *Estate of John Fredericks, Jr.*, 57 IBIA 204, 205 (2013).

b. Oil Lease Proceedings

27.     Even as probate proceedings remained ongoing before Judge Yellow Tail and the IBIA, Judy moved to appropriate to herself the mineral wealth of Fredericks, Jr.'s estate.

28.     On February 4, 2008, Judy purported to execute, on behalf of the "Estate of John Fredricks, Jr. [sic]," an Oil and Gas Exploration Lease for Allotment No. 1029A-A[1] with Kodiak Oil and Gas (the "Oil Lease"; attached as Exh. C).

29.     This action was patently unlawful, as the FBMLA reserves to the Department the authority to execute "mineral leases … on behalf of a[] … deceased" Indian owner where "the heirs … have not been determined."  FBMLA § 1(a)(3)(A).

30.     The Oil Lease has a primary term of five years and a secondary term for so long as

---

[1] The BIA has created a numbering system for trust lands. Tracts of lands are assigned a numerical identifier for ease of identification by the BIA.

oil and/or gas are produced in paying quantities.

31.     The Oil Lease bears a stamp indicating that it was recorded by the BIA's Land Titles and Records Office.

32.     Only in March 2013 did the Heirs become aware of the Oil Lease.

33.     The Heirs attempted to raise the lease's invalidity during the appeal of Judge Yellow Tail's probate decision.  *Estate of Fredericks, Jr.*, 57 IBIA at 209 n.13.

34.     The IBIA, however, declined to consider those arguments at that time, ruling that questions of the Oil Lease's validity and the proper distribution of payments under the lease were "outside the scope of th[e] probate proceeding" and that the Heirs instead had to "exhaust their administrative remedies within BIA—through the administrative appeals process—prior to seeking review."  *Id.*

35.     On July 23, 2013, the Heirs submitted to the BIA Regional Director a request to: (i) segregate the proceeds from the Oil Lease;[2] (ii) distribute such proceeds only to the Heirs, in accordance with the FBMLA; and (iii) declare the Oil Lease invalid.

36.     The Heirs also brought suit against the Department in the Court of Federal Claims. That suit was ultimately stayed while the Heirs pursued administrative remedies.  *Fredericks v. United States*, 125 Fed. Cl. 404 (2016).

37.     In August 2015, during the Court of Federal Claims litigation, the government produced a form that stated that it had been signed by the Superintendent of the Fort Berthold Agency on April 23, 2008 and stated that it "accept[ed] the bonus, in the amount of $300/acre"

---

[2] There are two primary sources of income into Fredericks, Jr.'s estate: Oil royalties and agricultural lease funds. Those funds are placed into an "Individual Indian Money" account (an "IIM Account"). During probate, those funds are held until the Department directs their disbursement in accordance with determinations of the BIA Probate Judge and the IBIA.

that Kodiak Oil paid on the Oil Lease.  *See* Exh. D; United States' Motion to Dismiss, Ex. 1, *Fredericks v. United States*, Case No. 1:14-cv-00296-CFL (Fed. Cl. Aug. 14, 2015), ECF No. 25-1.

38.     The government claimed that the Superintendent's signature on this "Acceptance of Lessor" form constituted the Superintendent's execution of the Oil Lease itself.  On its face, the "Acceptance" form specifies that "this acceptance shall be attached to the formal lease contract" and "become[s] a part of" that contract, but it does not say that the Department has executed the Oil Lease.  Exh. D.  The signature designates the Superintendent as having signed under "25 CFR 212.21(a) (b) (c)."  *Id.*  That regulation, however, has been "supersede[d]" by the FBMLA.  *Oil Lease Decision*, 67 IBIA at 133.  Unlike the Oil Lease itself, the "Acceptance" form contains no recording stamp and was not notarized.

39.     The Heirs were not consulted or informed, nor were their approvals and consents secured, prior to Judy's execution of the Oil Lease or the Superintendent's execution of the "Acceptance" form.[3]

40.     The Superintendent knew, when he executed the "Acceptance" form, how Fredericks, Jr.'s estate would be distributed.  Although probate proceedings continued until 2009, it was obvious and widely understood that the Heirs would inherit Fredericks, Jr.'s trust property.

41.     The BIA has a trust responsibility to protect the Heirs' trust land, including to preserve, protect, and ensure that the Heirs receive the income derived from the minerals on

---

[3] The Oil Lease Decision also observed that the Superintendent "approved the [Oil] Lease by signing the form lease."  *Oil Lease Decision*, 67 IBIA at 139.  But that signature is irrelevant because there was nothing to approve.  Under the FBMLA, "the owners of a majority of the undivided interest [can] consent to [a] lease," and the Secretary may then "approv[e] [that] lease." FMBLA § 1(a)(2)(A).  Judy, however, did not own a majority of the undivided interests in the estate property.  Hence, the Superintendent could not approve any action she undertook; he could only *execute* a lease *himself* on behalf of the estate.  *Id.* § 1(a)(3).

Fredericks, Jr.'s trust property.

42.     At all times relevant to this Complaint, the Department failed to act in the Heirs' best interest, as required by the FBMLA, the Department's own regulations, and the Department's trust responsibilities.

43.     On February 15, 2017, the Regional Director denied all of the relief requested by the Heirs.  Exh. E.

44.     The Heirs timely appealed the Regional Director's decision to the IBIA.

45.     On August 4, 2020, the IBIA issued a decision—the Oil Lease Decision— upholding the Regional Director's decision.

46.     The IBIA first held that the Superintendent's execution of the "Acceptance" form constituted the Superintendent's execution of the Oil Lease, notwithstanding the form's express language distinguishing the form from the lease.

47.     The IBIA characterized the Superintendent's citation of 25 C.F.R. § 212.21, though inapplicable, as "not completely incorrect inasmuch as" that regulation "authorizes the Superintendent to execute a lease on behalf of the undetermined heirs of a decedent's estate under conditions more onerous than the FBMLA."  *Oil Lease Decision*, 67 IBIA at 142.[4]

48.     This determination was arbitrary and capricious and unsupported by substantial evidence.  The "Acceptance" form is express that the form accepts "the bonus" but that the Superintendent's signature on the "Acceptance" form does not constitute execution of the Oil Lease.  The IBIA also asserted that it had previously held that a party's signature on an "Acceptance" constituted execution of the underlying lease, but the IBIA's characterization of its

---

[4] The rules in 25 C.F.R. § 212.21(a) require the Department to offer a mineral lease for auction before executing it on behalf of undetermined heirs.  The FBMLA includes no such requirement.

precedent was plainly wrong.

49.     Second, the IBIA held that the Superintendent's execution of the Oil Lease was lawful and that Judy was entitled to all payments under the Oil Lease.  It rejected the Heirs' argument that the FBMLA, and the hornbook principles of property law that the FBMLA incorporates, prohibited the Superintendent from executing a mineral lease at the behest of a life tenant that directs all its mineral revenues to the life tenant.

50.     This determination was arbitrary and capricious and contrary to law.  In executing a lease under the FBMLA, the Department was obligated to act in the best interests of the Indian landowners of the mineral estate, in accordance with its general trust obligations.  The Department violates those obligations where, as here, it approves a mineral lease at the behest of a life tenant that provides all the benefits to the life tenant.  The "uniform rule" of property law is "that the life tenant … is not privileged to take oil and gas, nor has he the power to create such privilege in others by way of lease of the land for oil and gas purposes." *Eide v. Tveter*, 143 F. Supp. 665, 671 (D.N.D. 1956) (quotations marks omitted).  Likewise, FBMLA § 1(a)(2)(C) provides that "proceeds derived from a lease or agreement that is approved by the Secretary under subparagraph (A) shall be distributed to all owners of the Indian land that is subject to the lease or agreement in accordance with the interest owned by each such owner."  A life tenant is not an "owner" within the meaning of the FBMLA.  Nor does the Department owe trust responsibilities to life tenants; instead it owes such responsibilities only to heirs and remaindermen. *See supra* ¶ 1; *Rights-of-Way on Indian Land*, 80 Fed. Reg. 72,492, 72,498 (Nov. 19, 2015) ("BIA is responsible for enforcing the terms of the right-of-way only on behalf of the remaindermen because BIA's trust responsibility is to the remaindermen because they are the beneficial owners of the Indian land, rather than the life tenants"); *Residential, Business, and Wind and Solar Resource Leases on Indian*

*Land*, 77 Fed. Reg. 72,440, 72,443-44 (Dec. 5, 2012) (Department "does not agree that Congress expressed its intent to extend the fiduciary duty to life tenants"). The IBIA erred in sanctioning the Oil Lease and the distribution of its proceeds to the life tenant. Indeed, there is no evidence that the Superintendent even considered the best interests of the remaindermen in executing the Oil Lease.

51. Rather than follow the FBMLA, the IBIA instead incorrectly applied a provision of the American Indian Probate Reform Act of 2004 ("AIPRA"), 25 U.S.C. § 2201 *et seq.*, which provides surviving spouses "a life estate without regard to waste in the interests in trust or restricted lands of the decedent." 25 U.S.C. § 2206(a)(2)(A). But this reliance violated the AIPRA itself, which provides that "[n]othing in this chapter shall be construed to supersede, repeal, or modify any general or specific statute authorizing the grant or approval of any type of land use transaction involving fractional interests in trust or restricted land," including the FBMLA (as well as the AIAMRA, discussed below). 25 U.S.C. § 2218(g); *see id.* § 2218(f) (similar rule).

52. Moreover, the AIPRA does not even purport to address the question in this case. This case does not involve an attempt by Judy, as a "surviving spouse" and life tenant, to enter a lease grounded on her purported right to "a life estate without regard to waste." 25 U.S.C. § 2206(a)(2)(D). Instead, this case concerns the Department's own decision to execute a lease on behalf of the estate. Nothing in the AIPRA licensed the Department, in undertaking that action, to disregard the best interests of the Indian landowners and to approve a lease designed precisely to destroy their mineral interests forever. Nor did the AIPRA anywhere abrogate the trust responsibility that Congress imposed on the federal government when it allotted the Fort Berthold Reservation and that Congress reaffirmed in the FBMLA and its regulations.

53. The IBIA's Oil Lease Decision is final for the Department and is immediately

12

effective.

54.     The Oil Lease concerns trust lands in the Bakken formation in Western North Dakota.

55.     Today, there are at least three producing oil wells on the leased land, which have generated royalties exceeding $4,000,000.  When Fredericks, Jr. passed away, there were no oil wells on the leased land and no mineral leases for the extraction of oil from these lands.

56.     The BIA maintains an Individual Indian Money ("IIM") account for the John Fredericks, Jr. estate.

57.     The BIA has deposited the proceeds of the Oil Lease (including royalties) into the estate IIM account.

58.     The Regional Director's February 15, 2017 decision stated that the BIA would not distribute the proceeds from the Oil Lease until "the exhaustion of all administrative and judicial proceedings."  Exh. E at 4.

59.     Sometime after this decision, the BIA began distributing the proceeds of the Oil Lease to Judy Fredericks, without notice to the Heirs.

60.     Even so, $2.8 million in proceeds from the Oil Lease, from production prior to the Regional Director's decision, remains in the estate IIM account.

61.     Now that the IBIA has issued a final decision for the Department on the Oil Lease, the BIA may distribute the remaining IIM account proceeds from the Oil Lease to the life tenant at any time.

62.     The Department's actions have greatly diminished the mineral assets of the Fredericks, Jr. estate, and will greatly diminish those mineral assets further if the Department distributes what remains in the estate IIM account.

13

c. Agricultural Lease Proceedings

63.     After Fredericks, Jr. passed away and probate proceedings began, the BIA in 2009 and in 2010 granted Judy Fredericks a revocable permit to use trust land comprising Fredericks, Jr.'s estate.

64.     The 2010 permit expired in December 2010.

65.     The Heirs received no prior notice that these leases or permits would be issued. The Heirs had previously put the BIA on notice that the Heirs, as majority landowners, desired to lease the land to Casey Fredericks, who was one of Fredericks, Jr.'s sons engaged in the ranching business and who the Heirs knew would not damage or overgraze the land.

66.     Instead, under the permit granted by the BIA, Judy Fredericks entered into an agreement with Garvin Gullickson, a non-Indian, to use the land to pasture Gullickson's cattle.

67.     The Heirs did not approve the agreement between Judy Fredericks and Gullickson.

68.     The BIA allowed Gullickson, without legal authority, to trespass upon the land, illegally graze livestock, unlawfully remove grass and other forage, dig up a spring, ruin a stock tank, and despoil two of three sources of water, causing a diminution in the flow of creeks on the land.

69.     Judy Fredericks also allowed her son-in-law to bulldoze portions of the trust land, which then became weed-infested, and to destroy native grass.  The Department had notice of this misconduct, took pictures, but did nothing to protect or restore the trust lands.

70.     The BIA has a trust responsibility to protect the land and comply with federal statutes authorizing the leasing or permitting of trust land.

71.     On July 6, 2012, the Heirs submitted to the BIA a request for approval of an agricultural lease (the "Ag Lease") to Casey Fredericks.

72.     The BIA did not act on the Heirs' request.

73.     On November 18, 2013, the Heirs submitted a second request seeking approval of the Ag Lease to Casey Fredericks.

74.      The Heirs submitted these requests pursuant to the American Indian Agricultural Resource Management Act ("AIARMA"), 25 U.S.C. §§ 3701 *et seq.*

75.     The AIARMA provides that the "owners of a majority interest … are authorized to enter into an agricultural lease of the surface interest," which "shall be binding upon the owners of the minority interest in such land if the terms of the lease provide such minority interests with not less than fair market value for such land."  25 U.S.C. § 3715(c)(2)(A).

76.     The AIARMA defines "Indian landowner" to include any Indian who "owns … Indian land" or is "the beneficiary of the trust under which … Indian land is held by the United States."  *Id.* § 3703(13).

77.     The Heirs are "owners" and "Indian landowners" under the AIARMA.

78.     Together, the Heirs collectively represent a majority of the ownership interests in the lands sought to be leased.

79.     Hence, the AIARMA expressly authorizes the Ag Lease.

80.     Nonetheless, on March 28, 2014, the Superintendent for the Fort Berthold Agency refused to approve the Ag Lease to Casey Fredericks.

81.     On April 24, 2014, the Heirs appealed to the Aberdeen Regional Office.

82.     On March 10, 2015, the Regional Director upheld the Superintendent's decision.

83.     On March 30, 2015, the Heirs appealed the Regional Director's decision to the IBIA.

84.     On July 28, 2016, the IBIA—in the Ag Lease Decision—affirmed the decision of

15

the Regional Director.  *Ag Lease Decision*, 63 IBIA 274.

85.    The IBIA conceded that the Heirs "are beneficiaries of the trust under which the trust property is held" and thus are owners under the AIARMA.  *Id.* at 279.  But the IBIA declined to apply the AIARMA as written, averring that the Heirs' status as owners "does not give them the authority to enter into a lease" because remaindermen lack a "present possessory interest" under the common-law rules that would apply if Congress had not addressed the matter by statute.  *Id.*

86.    By departing from the AIARMA, the Ag Lease Decision is arbitrary, capricious, and not in accordance with law.[5]

87.     The IBIA's Ag Lease Decision was final for the Department and was immediately effective.

## CAUSES OF ACTION

### COUNT I: VIOLATION OF THE APA (OIL LEASE DECISION)

88.    The Heirs re-allege and incorporate by reference all the allegations set forth in Paragraphs 1 to 87.

89.    The APA empowers this Court to "hold unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or that is "unsupported by substantial evidence."  5 U.S.C. § 706(2)(A), (E).  The APA also empowers the Court to "compel agency action unlawfully withheld or unreasonably delayed."  *Id.* § 706(1).

90.    The Oil Lease Decision is final agency action within the meaning of the APA.

91.    The Oil Lease Decision is arbitrary and capricious and unsupported by substantial evidence insofar as it concluded that the Superintendent executed the Oil Lease by signing the "Acceptance" form.

---

[5] Moreover, any regulations that are inconsistent with the FBMLA or the AIAMRA are invalid and of no effect.

92.     Even if the Superintendent executed the Oil Lease by signing the "Acceptance" form, the Oil Lease Decision is arbitrary and capricious and not in accordance with law insofar as it upheld the Superintendent's decision to execute a lease, at the life tenant's behest, that would direct the trust lands' mineral wealth to the life tenant and destroy the interests of the remaindermen in the mineral wealth they own.  The FBMLA and hornbook principles of property law prohibited the Superintendent from executing a mineral lease at the behest of a life tenant that directs all of the land's mineral revenues to the life tenant.  Instead, the FBMLA required the Department to reject the Oil Lease.  Moreover, the FBMLA required the Department, when executing a mineral lease on behalf of undetermined heirs, to distribute any proceeds under such a lease to the remaindermen.

93.     The Heirs are entitled to an order setting aside the Oil Lease Decision as arbitrary and capricious, not in accordance with law, and unsupported by substantial evidence.

94.     Moreover, the Department unlawfully withheld action in response to the Heirs' request to distribute the proceeds of the Oil Lease only to the remaindermen, as the Department's trust duties and the FBMLA require.

95.     The Heirs are entitled to an injunction prohibiting the Department from taking any further steps to effectuate the Oil Lease or the Oil Lease Decision; prohibiting the Department from distributing any funds from Fredericks, Jr.'s estate IIM account or any proceeds of the Oil Lease to Judy Fredericks; mandating that the Department distribute all proceeds of the Oil Lease only to the remaindermen; and mandating that the Department take all necessary steps to make the Heirs whole for the unlawful extraction of minerals under the Oil Lease.

## COUNT II: VIOLATION OF THE APA (AG LEASE DECISION)

96.     The Heirs re-allege and incorporate by reference all the allegations set forth in Paragraphs 1 to 87.

97.     The APA empowers this Court to "hold unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).  The APA also empowers the Court to "compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).

98.     The Ag Lease Decision is arbitrary, capricious, and not in accordance with law insofar as it failed to adhere to the clear terms of the AIARMA empowering the Heirs to enter agricultural leases.

99.     The Heirs are entitled to an order setting aside the Ag Lease Decision as arbitrary and capricious and not in accordance with law.

100.    Moreover, the Department unlawfully withheld action in response to the Heirs' request to approve agricultural leases endorsed by the holders of a majority of the remainder interests in the leased lands.

101.    The Heirs are entitled to an injunction mandating that the Department approve agricultural leases endorsed by the holders of a majority of the remainder interests in the leased lands pursuant to the AIARMA, and prohibiting the Department from granting an agricultural permit or lease, or approving an agricultural permit or lease, concerning the agricultural lands of Fredericks, Jr. except pursuant to the consent of a majority of the remaindermen.

## COUNT III: BREACH OF TRUST (OIL LEASE)

102.    The Heirs re-allege and incorporate by reference all the allegations set forth in Paragraphs 1 to 87.

103.    The Department owed trust and fiduciary duties to the Heirs as the trustee for the lands in which the Heirs own a remainder interest, including the mineral assets of those lands that the Heirs own.

104.    The Department also owed trust and fiduciary duties to the Heirs as the trustee for the Fredericks, Jr. estate.

105.    The Heirs are entitled to a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, that the Department violated its trust and fiduciary duties by approving and/or executing the Oil Lease and by distributing the proceeds of the Oil Lease to Judy Fredericks, and that further disbursements of Oil Lease proceeds from the estate IIM to anyone other than the heirs of Fredericks, Jr. constitutes a failure to protect the Heirs' trust property.

106.    The Department's approval and/or execution of the Oil Lease and distribution of the proceeds of the Oil Lease to Judy Fredericks constitute final agency action and the withholding of agency action that is required under the APA.

107.    The Heirs are entitled to an order under 5 U.S.C. § 706 and/or 28 U.S.C. § 1361 mandating that the Department:

   a.  Segregate the proceeds of the Oil Lease until the conclusion of this litigation;

   b.  Take the actions necessary to document and acknowledge that the heirs of Fredericks, Jr. are the owners of the mineral assets of the trust lands they inherited from Fredericks, Jr. and have the right to lease their trust property in accordance with the FBMLA;

   c.  Administer and account for the Heirs' mineral rights in the trust lands;

   d.  Disburse any proceeds of the Oil Lease to the heirs of Fredericks, Jr. in accordance with the interest owned by each heir;

e. Collect, deposit and invest, safeguard, and distribute funds owing to the Heirs from the extraction of mineral resources, including oil and gas, from the trust lands.

## COUNT IV: BREACH OF TRUST (AG LEASE)

108. The Heirs re-allege and incorporate by reference all the allegations set forth in Paragraphs 1 to 87.

109. The Department owed trust and fiduciary duties to the Heirs as the trustee for the lands in which the Heirs own a remainder interest.

110. The Department also owed trust and fiduciary duties to the Heirs as the trustee for the Fredericks, Jr. estate.

111. The Heirs are entitled to a declaration under the Declaratory Judgment Act, 28 U.S.C. § 2201, that the Department failed to uphold its trust obligation by denying the Heirs' rights under the AIARMA to enter an agricultural lease and instead issuing permits to Judy Fredericks and by allowing degradation of the trust lands and failing to prevent the diminution of land and water resources on the trust lands.

112. Such actions constitute final agency action and the withholding of agency action that is required under the APA.

113. The Heirs are entitled to an order under the APA and/or 28 U.S.C. § 1361 compelling the Department to:

a. Acknowledge and effectuate the Heirs' right to enter agricultural leases for the trust land under the AIARMA;

b. Determine the amount of damages caused by the overgrazing and water diminution caused by Judy Fredericks and Gullickson and by the bulldozing allowed by the Department;

    c.   Restore the land damaged by overgrazing, water diminution, and bulldozing; and

    d.   Collect, on behalf of the heirs of Fredericks, Jr., damages caused by the overgrazing, water diminution, bulldozing, and other unauthorized damage to the trust land.

### COUNT V: ACCOUNTING

114.    The Heirs re-allege and incorporate by reference all the allegations set forth in Paragraphs 1 to 87.

115.    The Department, as trustee, has a duty to account to the Heirs for the trust property that it holds and manages for the benefit of the Heirs pursuant, *inter alia*, to 25 U.S.C. §§ 162a, 348, and 4011, the common law of trusts, the 1886 allotment agreement and subsequent Congressional actions ratifying that agreement, and the United States' Indian policy.

116.    The Department's duty to account includes, but is not limited to,  the duty to provide a full disclosure and description of each item of property constituting the corpus of the trust, as well as any funds that have been collected or received in connection with the trust property; the duty to provide adequate controls over receipts and disbursements; to provide periodic, timely reconciliations to assure the accuracy of accounts; to determine accurate cash balances; and to establish consistent, written policies and procedures for trust fund management and accounting of the Heirs' rights under the FBMLA and the AIARMA.

117.    The Department has breached these duties.  In particular, the Department has failed to discharge its duty to account to the Heirs, and has failed to manage and protect the Heirs' trust property and act in the Heirs' best interests.

118.    The Heirs are entitled to an order directing the Department to provide an accounting to the Heirs for the Heirs' trust property; the production and extraction of minerals from that

property; the leasing of that property for agricultural purposes; and all royalties or lease payments due and/or collected on or pertaining to such minerals and property.

**PRAYER FOR RELIEF**

Therefore, the Heirs respectfully request that the Court:

A.     Set aside the Oil Lease Decision and the Ag Lease Decision;

B.     Declare that the Oil Lease Decision and the Ag Lease Decision were arbitrary, capricious, an abuse of discretion, not in accordance with law, and unsupported by substantial evidence, in violation of the APA, 5 U.S.C. § 706(2)(A), (E);

C.     Declare that the Department has unlawfully withheld agency action, thereby violating the APA, *id.* § 706(1);

D.     Declare that the Department has breached its trust obligation to the Heirs regarding the trust lands' mineral estate;

E.     Declare that the Department has breached its trust obligation to the Heirs regarding the agricultural lands;

F.     Declare that any actions or regulations of the Department that are inconsistent with the FBMLA or AIARMA are invalid and of no effect;

G.     Enjoin the Department from taking any steps to implement the Oil Lease and Ag Lease Decisions;

H.     Enjoin the Department to distribute all proceeds of the Oil Lease only to the heirs of John Fredericks, Jr.;

I.     Enjoin the Department to account to the Heirs for the trust lands' mineral estate, including the production and extraction of minerals from the trust lands and the value of royalties or revenue owed thereon;

22

J.      Enjoin the Department to account to the Heirs for the agricultural lands, including any income from leasing of said lands;

K.      Enjoin the Department to take the necessary administrative steps to document that the mineral estate is held in trust by the United States for the benefit of the Heirs, and that the Heirs have leasing rights under the FBMLA and AIARMA;

L.      Enjoin the Department to take all necessary steps to make the Heirs whole for the unlawful extraction of minerals under the Oil Lease and to make the Heirs whole for those funds owed to the Heirs from the extraction of mineral resources from the mineral estate, or related to the agricultural lands, for which the Department cannot account;

M.      Enjoin the Department to approve agricultural leases consented to by a majority of the heirs of Fredericks, Jr.;

N.      Assess against the Department the Heirs' reasonable fees, costs, and expenses, including attorneys' fees, for this action; and

O.      Award such further relief as the Court may deem just and equitable.


Respectfully submitted this 2nd day of September, 2020.

/s/ Keith M. Harper

Keith M. Harper (DC Bar No. 455688)
Zachary C. Schauf (DC Bar No. 1021638)
JENNER & BLOCK LLP
1099 New York Avenue, N.W.
Washington, D.C., 20001-4412
(202) 639-6000
kharper@jenner.com
zschauf@jenner.com